IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

LAWRENCE J. WALKER, JR.

                                    :

      v.                       : Civil Action No. DKC 2002-1300

:

CARLTON DEAN, *et al.*

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is the motion of Defendants, six Prince George's County Police Officers, for summary judgment. (Paper 59). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant Defendants' motion for summary judgment.

## I.  Background

The following facts are either uncontroverted or construed in the light most favorable to Plaintiff Lawrence J. Walker, Jr.

In the early morning of August 5, 1999, Plaintiff was walking in the 4700 block of Homer Avenue in Suitland, in Prince George's County, Maryland.[1] (Paper 1). Defendants Officer Patrick Hampson and Officer Carlton Dean were on duty and patrolling that area, which was a heavy drug area. (Ex. 1, Hampson Aff., at 2; Ex. 2,

---

[1] Defendants state that they encountered Plaintiff on Hudson Avenue in Suitland, Maryland. (*See* Exs. 1 & 2). This factual dispute is immaterial.

Dean Aff., at 1).[2]  Defendant Hampson observed Plaintiff walk past a person on the street, later identified as Shawn Chambers, and engage in what they concluded was a hand to hand drug transaction. (Ex.1, Hampson Aff., at 2; Ex. 4, Walker Dep., at 10).

Defendant Hampson called out to Plaintiff and asked him to approach.  (Ex. 1, Hampson Aff., at 3).  As Defendant Hampson was talking to Plaintiff, Defendant Dean observed Mr. Chambers discard what he perceived to be units of crack cocaine and arrested him. (*Id.*; Ex. 2, Dean Aff., at 2).   Defendant Hampson requested Plaintiff's identification, which Plaintiff turned over.  (Ex. 1, Hampson Aff., at 3).  Defendant Hampson ran a warrant check and learned that Plaintiff had an outstanding warrant for probation violation from the Rockville Police Department.  (Ex. 1, Hampson Aff., at 3).  Defendant Hampson informed Plaintiff that he was under arrest and placed one handcuff on his left wrist (*id.*; Ex. 4, Walker Dep., at 14).

Plaintiff alleges that Defendant Hampson then told him to kneel, kicked him on the ankle, and told him to cross his legs. (Paper 1, at 4).  Plaintiff began struggling and pulled away.  (Ex. 4, Walker Dep., at 17; Ex. 1, Hampson Aff., at 3).  A "violent struggle ensued with other officers joining in to attain control" of Plaintiff.  (Ex. 1, Hampson Aff., at 4).  The record shows that

---

[2]  In citations to the record, exhibit numbers refer to those exhibits attached to Defendants' motion for summary judgment, paper 59.

Defendant Officer Warren Garrison also participated in the altercation. (Ex. 6, Statement of Probable Cause). Plaintiff said Defendant Dean hit him on the back of the head with a blunt object and he was sprayed with what he thought was mace. (Ex. 4, Walker Dep., at 15). Defendant Hampson conceded that he deployed his departmental issued "OC spray."[3]   (Ex. 1, Hampson Aff., at 4).

Plaintiff pulled away from the officers and ran behind a building and over a fence. (Ex. 4, Walker Dep., at 17; Ex. 1, Hampson Aff., at 4). He was apprehended by Defendant Officer David Renner, and handcuffed on both hands.  (Ex. 6, Statement of Probable Cause). Plaintiff states that while he was handcuffed and subdued, a Black officer "slugged [him] on [his] head, and at point blank range" sprayed OC spray in his face. (Ex. 4, Walker Dep., at 20).

Defendant Hampson transported Plaintiff to Prince George's County Hospital for treatment for the OC spray and scrapes and bruises he sustained in the struggle. (Ex. 1, Hampson Aff., at 4). Plaintiff's wounds were irrigated and sterilized. (Ex. 3). At the hospital, Plaintiff repeatedly threatened to spit on Defendants

---

[3] "The effects of OC [Oleoresin Capsicum] spray include (1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging sensation in the throat, and (3) immediate burning sensations to the mucous membranes, skin and inside the nose and mouth." *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001).

Hampson and Dean, who were with him at the hospital.  (Ex. 4, Walker Dep., at 50).  Plaintiff  testified that in response to his threats to spit on the officers, Defendant Hampson retrieved a towel from a nurse and threatened to tie up Plaintiff. (*Id.*).  At some point while Plaintiff was being treated, Defendant Officer Carolyn Delaney appeared.  (*Id.* at 24).

After Plaintiff's treatment was completed, Plaintiff alleges that Defendants Dean and Hampson dragged him from the hospital, dropped him on his head, and tied him up in the front seat of the police car.  (Paper 1, at 4; Ex. 4, Walker Dep., at 29).  Plaintiff alleges that once he was in the car, Defendant Hampson placed the towel the nurse had given him around Plaintiff's nose and mouth and taped it with medical tape.  (Paper 1, at 4).  Defendant Delaney watched as Defendants Hampson and Dean transported Plaintiff to the police car.  (Ex. 4, Walker Dep., at 29).

 Defendants drove Plaintiff from the hospital to the Palmer Park police station.  Plaintiff claims he had difficulty breathing during the ride, due to the towel placed over his nose and mouth. (*Id.* at 29).

Plaintiff was charged with assaulting Defendant Hampson, resisting arrest and related charges.  (Ex. 6).  Plaintiff pled *nolo contendere* to second degree assault.  (*Id.*)  Plaintiff filed a complaint with the Prince George's County Police Department,

which was investigated by Detective Daniel Dusseau.  (*Id.*).  No charges were sustained against any of the officers.  (*Id.*).

Plaintiff filed a complaint with this court on April 15, 2002, against Defendants Dean, Delaney, Hampson, Garrison, Renner, and Officer Matthew Stauffer.  Plaintiff seeks payment of his medical bills resulting from the incident and $200 million in damages. (Ex. 4, Walker Dep., at 62; paper 20).  Defendants move for summary judgment.  (Paper 59).[4]

It has been and remains unclear precisely what claims Plaintiff makes against Defendants.  Because Plaintiff appears *pro se*, thus requiring "special judicial solicitude[,]" *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), the court will use Plaintiff's complaint, deposition, and more definite statement of facts to articulate the claims he could assert.  When a complaint is filed *pro se*, the court is "obligated to construe it liberally to assert any and all legal claims that its factual allegations can fairly be thought to support."  *Martin v. Gentile,*

---

[4] This case has had a long and somewhat tortured history. After Defendants were served, they filed a motion to dismiss. Plaintiff was directed to supplement his complaint.  Eventually, the motion to dismiss was denied, and Defendants answered.  The court appointed counsel for Plaintiff, and a scheduling order was entered.  Plaintiff declined to be represented by appointed counsel.  At that point, because Plaintiff was incarcerated, the case was placed in inactive status.  Once Plaintiff was released, the case was reopened.  Defendants then filed the pending motion for summary judgment.

849 F.2d 863, 868 (4th Cir.  1988) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).

Plaintiff could potentially assert 42 U.S.C. § 1983 claims for (1) an illegal stop in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment, (2) false arrest in violation of the Fourth Amendment, and (3) excessive force in violation of the Fourth Amendment and Due Process Clause of the Fourteenth Amendment.  Plaintiff could also potentially assert state tort claims for (4) battery, and (5) false arrest and/or imprisonment.[5]  For ease of reading, this Memorandum Opinion will be written as if Plaintiff did, in fact, make these claims.

**II.  Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party[,]" then

---

[5]    Plaintiff also seems to allege cruel and unusual punishment, a violation of the Eighth Amendment.  (Paper 62).  He cannot sustain this claim because the Eighth Amendment applies "only after the State . . . has secured a formal adjudication of guilt in accordance with due process of law."  *Ingraham v. Wright*, 430 U.S. 651, 671-672, n. 40 (1977).  The events at issue in this lawsuit occurred prior to "a formal adjudication of guilt."

summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d

529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A. Defendants Stauffer, Renner, Garrison, and Delaney

Defendants assert that Plaintiff has made no specific allegations concerning Defendants Stauffer, Renner, or Garrison. To overcome a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Plaintiff fails to allege any facts whatsoever against Defendant Stauffer, nor does he provide any evidence of his involvement. Similarly, Plaintiff offers no evidence of wrongdoing on the part of Defendant Renner. Plaintiff learned of Defendant Garrison's name through the internal affairs investigation, but has presented no evidence that he undertook any action alleged to have been improper. (Ex. 4, Walker Dep., at 33). Because Plaintiff has failed to allege specific facts against Defendants Stauffer, Renner, or Garrison, judgment will be entered in their favor.

Plaintiff charges that Defendant Delaney is responsible for his injuries because she watched as Defendants Hampson and Dean

dropped him on his head and tied a towel around his face as they left the hospital.  (Ex. 4, Walker Dep., at 29).  As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct.  *Randall v. Prince George's County, Md.*, 302 F.3d 188, 202 (4th Cir. 2002).  The United States Court of Appeals for the Fourth Circuit does, however, recognize a theory of bystander liability premised on a law officer's duty to uphold the law and protect the public from illegal acts.  *Id.* at 203.  "[An] officer may be liable under § 1983, on a theory of bystander liability, if [she]: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Id.* at 204 (footnote omitted).

Here, there is insufficient evidence to establish the first and second elements of the bystander liability test.  First, as discussed below, Defendants Hampson's and Deans's actions did not violate Plaintiff's constitutional rights.  Second, even if they did violate Plaintiff's constitutional rights, there is no evidence that Defendant Delaney would have had a reasonable opportunity to prevent the harm.  If indeed Plaintiff was dropped on his head, that happened in a matter of seconds and Defendant Delaney would have had no opportunity to prevent it.  Nor is there evidence that she was present while the towel was allegedly taped around Plaintiff's face.  During the course of the internal investigation,

Defendant Delaney prepared a statement about the incident in which she wrote:

> I got in the backseat behind Mr. Walker, and tied the towel, but it was not very secure due to the small size of the towel. The towel was originally tied over his nose, with the rest of it hanging loosely over his mouth and chin (bandit-style). The towel slipped off his nose above his upper lip as I exited the vehicle. Both officers [Hampson and Dean] got into the cruiser and drove to Dist. III while I followed behind in my cruiser.

(Paper 61, Attachment, Delaney Duress Statement, 11/29/99, at 4). If the towel was taped around Plaintiff's face, that occurred after Defendant Delaney existed the police car, thus she did not have a reasonable opportunity to prevent that from happening. Therefore, Defendant Delaney is entitled to judgment.

## B.  Stop and Arrest

Under § 1983, Plaintiff argues that Defendants violated his Fourth Amendment right to be free from unreasonable seizure when they illegally stopped and arrested him. Plaintiff also argues that Defendant Hampson stopped Plaintiff because Plaintiff is Black, thus violating the Equal Protection Clause of the Fourteenth Amendment.

To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 658 (4th Cir. 1998).

10

Plaintiff claims to be the victim of racial profiling. (Paper 62). Plaintiff alleges that the initial stop by Defendant Hampson was racially motivated and therefore illegal. A claim for racial profiling is treated as a § 1983 claim based on a violation of Plaintiff's rights under the Equal Protection Clause. *See Whren v. United States*, 517 U.S. 806, 813 (1996). To state an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir.), *cert. denied*, 540 U.S. 1089 (2003).

Plaintiff offers no evidence indicating that the stop made by Defendant Hampson was pretextual or based on race. To survive a summary judgment motion, Plaintiff may not rest on his pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995). In the absence of any such evidence, the court must conclude that Defendant Hampson's stop was not racially motivated.

Plaintiff cannot successfully allege a violation of his Fourth Amendment right based on the stop itself.

> The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause, *see Brown v. Illinois*, 422

11

> U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416
> (1975); (2) brief investigatory stops, which
> must be supported by reasonable articulable
> suspicion, *see Terry v. Ohio*, 392 U.S. 1, 88
> S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3)
> brief encounters between police and citizens,
> which require no objective justification, *see*
> *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct.
> 2382, 115 L.Ed.2d 389, (1991).

*United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).  It is

"axiomatic that police may approach an individual on a public

street and ask questions without implicating the Fourth Amendment's

protections." *Weaver*, 282 F.3d at 309.  When an officer merely

approaches a person and requests identification, like Defendant

Hampson in this case, his action falls under the latter category

and does not implicate the Fourth Amendment.  *Id.*

Nor was the action unconstitutional, even if it rose to the

level of a stop under *Terry v. Ohio*, 392 U.S. 1 (1968), prior to

ripening into an arrest.  The officers undoubtedly had reasonable

suspicion, given their observations of Plaintiff and Chambers, to

stop Plaintiff for a brief period, to request identification, and

to do a preliminary investigation.

Nor can Plaintiff successfully assert Fourth Amendment

violations based on his subsequent arrest.  First, he is barred by

the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  Under

*Heck*, for a § 1983 plaintiff to recover damages for allegedly

unconstitutional actions whose unlawfulness would render a

conviction or sentence invalid, he must prove that his conviction

or sentence has been reversed, expunged, declared invalid, or called into question. *Heck*, 512 U.S. at 486-87.

> [W]hen a state prisoner seeks damages in a §
> 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of his
> conviction or sentence; if it would, the
> complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction
> or sentence has already been invalidated.

*Id.* at 487 (quoted in *Young v. Nickols,* 413 F.3d 416, 419 (4th Cir. 2005)). Plaintiff entered a plea of *nolo contendere*, which under Maryland law, constitutes an implied confession of guilt. *Cohen v. State*, 235 Md. 62, 69 (1964). He was sentenced to 90 days in jail. (Ex. 6). A judgment that Defendants violated his Fourth Amendment rights by arresting him would necessarily imply the invalidity of both his conviction and his 90 day sentence. Without proof that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid, such a claim is barred by *Heck*.

Second, while an arrest must be supported by probable cause, *Brown*, 422 U.S. 590, Defendants met that standard. After checking Plaintiff's license, Defendant Hampson learned that Plaintiff had an outstanding warrant for his arrest. (Ex. 1, Hampson Aff., at 3). A facially valid arrest warrant provides the probable cause finding. *Clark v. Link*, 855 F.2d 156, 166 (4th Cir. 1988). Even disregarding Plaintiff's subsequent actions, which included

13

resisting arrest and attempting to flee, Defendants had probable cause to arrest Plaintiff.

Because Defendants had probable cause to arrest him, Plaintiff's claims for the Maryland torts of false arrest and/or imprisonment also fail.   The elements of false arrest and/or imprisonment are: "1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal justification." *Heron v. Strader*, 361 Md. 258, 264 (2000).  The "legal justification" to detain element is the "equivalent to legal authority" under the law of arrest.  *Ashton v. Brown*, 339 Md. 70, 120 (1995).  Because Defendants were acting pursuant to a facially valid arrest warrant, they had the legal authority to arrest Plaintiff.   Thus, Plaintiff's state tort claim for false arrest and/or imprisonment must fail.   Defendants are entitled to judgment for all claims arising out of the stop and arrest of Plaintiff.

### C.  Excessive Force

Plaintiff claims that Defendants Hampson and Dean used excessive force when they were first arresting him and then later when they were transporting him from the hospital to the police station.   This section must be divided chronologically because claims of excessive force during an arrest are analyzed under the Fourth Amendment, while claims of excessive force after arrest, but before trial, are analyzed under the Fourteenth Amendment.  *See Robles v. Prince George's County*, 302 F.3d 262 (4th Cir.), *reh'g &*

14

*reh'g en banc denied*, 308 F.3d 437 (4th Cir. 2002), *cert. denied*,

538 U.S. 945 (2003).

### 1. During the Arrest

As Defendant Hampson attempted to arrest Plaintiff, a "violent

struggle" ensued.   (Ex. 1, Hampson Aff., at 4).   Plaintiff

testified that he was hit on the head with a blunt object by

Defendant Dean and that Defendant Hampson sprayed him with OC

spray.  (*Id.*; Ex. 4, Walker Dep., at 15).   Hospital records show

that Plaintiff suffered a hematoma on the back of his head,

abrasions on his forehead, and contusions on his head, back, right

shoulder, and both wrists.  (Ex. 3).

The Fourth Amendment's freedom from unreasonable searches and

seizures unquestionably encompasses the right to be free of

excessive force during an arrest.  *See Jones v. Buchanan*, 325 F.3d

520, 527 (4th Cir. 2003).  This right is violated when an arresting

officer's actions are not "objectively reasonable in light of the

facts and circumstances confronting [him]."  *Graham v. Connor*, 490

U.S. 386, 397 (1989).  The reasonableness of an officer's conduct

must be assessed "from the perspective of a reasonable officer on

the scene, rather than with the 20/20 vision of hindsight."  *Id.* at

396.  Thus, the determination of whether the force used during the

course of an arrest was reasonable is extremely fact dependent.

The application of the Fourth Amendment reasonableness test

"requires careful attention to the facts and circumstances of each

particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.; see also Jones*, 325 F.3d at 527.

Defendant Hampson's use of OC spray and Defendant Dean's blow to the head are undoubtedly strong measures, but no reasonable fact finder could decide that they constituted an unreasonable amount of force under the circumstances. Plaintiff actively resisted arrest. He admitted that he struggled and pulled away after Defendant Hampson placed a handcuff on his left wrist. While Plaintiff was struggling, the metal handcuff was still attached to his left wrist, and his movements caused the handcuff to strike and injure Defendant Hampson in numerous places. (Ex. 1, Hampson Aff., at 4). Because of the threat to the safety of the officers and the fact that Plaintiff was actively resisting arrest, Defendants Hampson and Dean were justified in the amount of force they used.

For the same reasons, summary judgment with respect to Plaintiff's state tort claim for battery arising out of the actions incident to his arrest, will be granted to Defendants Hampson and Dean. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) ("The parallel state law claim of assault and battery is subsumed within the federal excessive force claim. . . .")

16

## 2. Transportation from Hospital to Police Station

Plaintiff also alleges that Defendants used excessive force in restraining him when, after receiving treatment at the hospital, Defendants Dean and Hampson dropped him on his head and Defendant Hampson taped a towel around his nose and mouth for the duration of the ride from the hospital to the police station.

As a pretrial detainee, Plaintiff's treatment and the conditions of his restraint are evaluated under the Due Process Clause of the Fourteenth Amendment. *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir.) (en banc), *cert. denied*, 522 U.S. 1030 (1997). In order to conclude that Plaintiff's rights under this clause were violated, "it is necessary to find that the officers' actions amounted to punishment and were not merely an incident of some other legitimate governmental purpose and that the injury resulting from their actions was more than *de minimis*." *Robles*, 302 F.3d at 269 (internal citations omitted); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [Plaintiff] must show that Defendants "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.), *cert. denied*, 525 U.S. 1181 (1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). "The proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.'" *Id.*

Plaintiff alleges that Defendants "dropped [him] on his head" as they were walking from the hospital to the police car. (Paper 1, at 4). There is no evidence to support a contention that Defendants meant to drop Plaintiff on his head, much less that they were acting maliciously or sadistically in so doing. Defendants Hampson and Dean both give the same version of events: as they were escorting Plaintiff out of the hospital, each officer held one of Plaintiff's arms, Plaintiff was not cooperating and lost his footing, causing all three men to stumble. (Exs. 1 & 2). Defendants state that it is possible that Plaintiff could have hit his head at this time, but that there was no visible injury and he did not complain that he was hurt. Plaintiff offers no evidence that he sustained injuries. It is clear that Defendants were engaged in the legitimate governmental purpose of transporting Plaintiff to the police station and did not use excessive force at this point.

Plaintiff also takes issue with the fact that Defendants taped a towel around his nose and mouth for the duration of the car ride. Defendants placed the towel around Plaintiff's nose and mouth for the purpose of preventing him from spitting on them. (Ex. 1, Hampson Aff., at 5). Whether Defendants used tape to secure the towel, or simply tied it around Plaintiff's face, is immaterial

because Plaintiff has failed to show that his injuries resulting from such force were more than *de minimis*. *See Riley*, 115 F.3d at 1166 (holding that a pretrial detainee cannot prevail on a § 1983 excessive force claim if his injury is *de minimis*). Plaintiff claims that he had problems breathing as a result of the towel. (Ex. 4, Walker Dep., at 29). Plaintiff does not allege that he was suffering any residual difficulty breathing from prior use of the OC spray. Furthermore, it is undisputed that Plaintiff did not request, nor receive, medical treatment as a result of the towel being placed around his mouth. (Ex. 3, Dusseau Aff., at 2). Plaintiff experienced no lasting physical injuries from this incident. Plaintiff states that he has suffered emotionally since that time (paper 18), but those injuries are also *de minimis*.

The Fourth Circuit held as *de minimis* a plaintiff's injuries that included pain when handcuffed too tightly, fear for his safety when the defendant placed the tip of a pen in his nose and threatened to rip it open, a welt on his face from the defendant slapping him, and suffering depression and nightmares from the defendant's treatment of him, when, as here, there was no medical documentation to support his claims. *Riley*, 115 F.3d at 1167. The Fourth Circuit also held as *de minimis* "slight swelling in the jaw area, and some irritation in the mucous membranes of the mouth[,]" resulting from an officer's use of a kubaton to pry open the plaintiff's mouth. *Taylor*, 155 F.3d at 484. Plaintiff's injuries

are no more severe than those of the plaintiffs in *Riley* and *Taylor*, thus his injuries must also be deemed *de minimis*. Because Plaintiff failed to establish an essential element of his federal claim for excessive force, Defendants Hampson and Dean are entitled to judgment.

Defendants are also entitled to summary judgment on the state battery claims, because there is no evidence that they acted with malice in placing the towel around Plaintiff's face or in allegedly dropping him on his head.

"Battery is traditionally defined as the unlawful application of force against another, either directly or indirectly." *Marquardt v. State*, 164 Md.App. 95, 129 (Md.Ct.Spec.App. 2005). The crime is committed no matter how slight the injury to the victim. *Id.* Under Maryland law, "a law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties *unless he acted with actual malice toward the plaintiff*, *i.e.* with 'ill will, improper motivation or evil purpose.'" *Curtis v. Pracht*, 202 F.Supp.2d 406, 417 (D.Md. 2002) (emphasis added) (citing *Davis v. Muse*, 51 Md.App. 93 (1982)).

> "Malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Lovelace v. Anderson*, 126 Md.App. 667, 693-94 (1999), quoting *Davis v. DiPino*, 99 Md.App. 282,

> 290-91 (1994), *rev'd on other grounds*, 337 Md.
> 642 (1995).  "The mere assertion that an act
> 'was done maliciously, or without just cause,
> or illegally, or with wanton disregard, or
> recklessly, or for improper motive' is not
> sufficient." *Manders v. Brown*, 101 Md.App.
> 191, 216 (1994), quoting *Elliott v. Kupferman*,
> 58 Md.App. 510, 528 (1984).  Plaintiffs "must
> allege with some clarity and precision those
> facts which make the act malicious." *Id.*

*Curtis*, 202 F.Supp.2d at 418 (parallel citations omitted). Plaintiff's version of the facts, that Defendant Hampson threatened to tie him up in response to Plaintiff's own insults and threats to spit on them, is insufficient to support a reasonable inference that Defendant Hampson acted with malice when he tied a towel around Plaintiff's face.  Defendants reasonably took steps to protect themselves from being spit on by Plaintiff.  Again, there is no evidence that Defendants intentionally dropped Plaintiff on his head, much less that they did so with malice.  Defendants are entitled to judgment on the state claims for battery.

## IV.  Conclusion

The court will grant Defendants' motion for summary judgment on all claims.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

February 2, 2007
